UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LIANA CARRIER LTD., et al.,          :
                                     :
                 Plaintiffs,         :        14-cv-3406 (VM)
                                     :
         - against -                 :
                                     :        DECISION AND ORDER
PURE BIOFUELS CORP., et al.,         :
                                     :
                 Defendants.         :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

     Plaintiffs Liana Carrier Ltd. ("Liana Carrier") and Amir
Rimon ("Rimon")(collectively, "Plaintiffs") were minority
shareholders of defendant Pure Biofuels Corp. ("Pure Corp").
Plaintiffs filed a complaint ("Complaint," Dkt. No. 2) on May
12, 2014 against Pure Corp., along with defendants Pure
Biofuels del Peru S.A.C.("Pure del Peru"), Pure Biofuels
Holdings, L.P. ("Pure Holdings"), Carlos Alberto Pinto Rocha
("Pinto"), Luis Humberto Goyzueta Angobaldo ("L. Goyzueta"),
Gustavo Goyzueta ("G. Goyzueta") and Brian S. Alperstein
("Alperstein") (collectively "Defendants"). Plaintiffs
asserted claims under Section 10(b)("Section 10(b)") of the
Securities Exchange Act of 1934, 15 U.S.C. Section 78a et
seq. (the "Exchange Act") and Rule 10b-5 ("Rule 10b-5")
promulgated thereunder, 17 C.F.R. Section 240.10b-5.
Plaintiffs also alleged common law and state law claims for
fraud, breach of contract and breach of fiduciary duty.

By Decision and Order dated August 14, 2015 (the "August 14 Order"), the Court granted Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). (Dkt. No. 23.) The Court concluded that Plaintiffs' Exchange Act claims arising from their 2008 purchase of Pure Corp. stock were time-barred and that the remaining allegations, arising from Pure Corp.'s April 2012 short form merger (the "Merger") with PBC Acquisition LLC ("PBC"), failed to state a claim under Section 10(b) and Rule 10b-5.

The Court indicated, however, that it was "not inconceivable" that Plaintiffs could remedy the defects in the Complaint regarding the Merger by adding sufficient factual allegations and instructed Plaintiffs to seek leave to file an amended complaint by letter "demonstrating how they would correct the deficiencies in their Complaint if granted leave to replead." (Dkt. No. 23 at 30.)

By letter dated August 24, 2015 ("August 24 Letter"), Plaintiffs outlined how they would amend the Complaint to adequately allege a securities fraud claim arising from the Merger. Defendants replied by letter on September 3, 2015 ("September 3 Letter"). The Court held a pre-motion conference by telephone with the parties on September 11,

2015 (Dkt. Minute Entry dated September 11, 2015), directing Plaintiffs to submit a second letter further detailing the particularized misstatements and omissions in connection with the Merger that they would allege in an amended Complaint as sufficient to state a securities law claim under Section 10(b) and Rule 10b-5. Plaintiffs submitted such a letter on September 28, 2015 ("September 28 Letter"). The Court construes this correspondence as a motion by Plaintiffs for leave to amend the Complaint. For the reasons discussed below, Plaintiffs' motion for leave to amend its Complaint is DENIED.

## I.    FACTUAL BACKGROUND[1]

The facts of this case were set forth in detail in the Court's August 14 Order, and familiarity with that decision is assumed. (Dkt. No. 23.) The claims that Plaintiffs seek leave to amend arise from the April 2012 Merger, during which Plaintiffs' shares in Pure Corp. were cancelled and converted into less than one cent per share.

In 2008, Plaintiffs purchased $5,500,000 worth of shares of Pure Corp., a publicly traded Nevada corporation. Pure Corp. wholly owned and directed Pure del Peru, a foreign

---

[1] The factual background below, except as otherwise noted, derives from the Complaint, Plaintiffs' Aug. 24 and Sept. 28 Letters, and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. Except where specifically quoted, no further citation will be made to the Complaint.

corporation. Defendants Pinto, G. Goyzueta, L. Goyzueta, and Alperstein held officer positions in Pure Corp. Between December 2008 and April 2011, Pure Corp. engaged in a series of loans and financing deals (the "Financing Transactions") with FDS Corporation S.A. ("FDS"), Trimarine Corporation S.A. ("Trimarine") and Plainfield Peru LLC ("Plainfield"). During this period, Defendant Pinto had an ownership interest in FDS and Trimarine. Because of Pure Corp.'s repeated -- and allegedly intentional -- defaults, the Financing Transactions resulted in Pure Corp. issuing millions of warrants for purchase of stock to those companies. At the conclusion of the Financing Transactions, Plainfield, FDS, and Trimarine collectively held more than 90 percent of Pure Corp.'s shares. Plaintiffs allege that FDS and Plainfield transferred their stock to PBC at some point before the April 2012 Merger,[2] making PBC the holder of more than 90 percent of Pure Corp. shares.

PBC merged into Pure Corp. on April 30, 2012 by way of a Nevada short form merger. Under Nevada law, a parent owning 90 percent of a subsidiary's outstanding shares may merge into the subsidiary without shareholder approval. Nev. Rev.

---

[2] Pure Corp. deregistered its securities on January 3, 2011, at which time its reporting requirements under the Exchange Act concluded. Plaintiffs can allege only that the transfer occurred between that time and the Merger.

Stat. Section 92A.180(2). As a result of the Merger, Pure Corp. was dissolved, and Plaintiffs' shares were cancelled and converted into the right to receive $0.00832 per share. Plaintiffs did not learn of the Merger until on or about May 10, 2012, when they received a Notice and Information Statement ("Notice of Merger") detailing the terms of the Merger.[3]

Plaintiffs contend that Defendants acted fraudulently by failing to disclose to shareholders and to Pure Corp.'s Board and Chief Financial Officer ("CFO")(1) Pinto's ownership interest in FDS and Trimarine and (2) Defendants' general scheme to issue dilutive shares by purposely defaulting on the Financing Transactions. Plaintiffs assert that these "extremely disadvantageous" related-party deals with FDS and Trimarine were designed to dilute minority shareholders' stock and centralize more than 90 percent of Pure Corp. shares in PBC in preparation for the Merger.

Essentially, Plaintiffs allege a chain of events that led to their forced sale of Pure Corp. shares at a heavily reduced price: Defendants' fraudulent statements related to the Financing Transactions permitted FDS, Trimarine and

---

[3] Upon merging with PBC, Pure del Peru was transferred to Pure Holdings, a Canada limited partnership. Later, Pure del Peru was acquired by Pegasus Capital Advisors L.P., a private equity fund manager with offices in Connecticut and New York.

5

Plainfield to amass millions of dilutive shares. The transfer of those shares to PBC allowed PBC to aggregate 90 percent of Pure Corp. stock, which allowed the Merger to go forward, in turn compelling the sale of Plaintiffs' shares.

## II.  **LEGAL STANDARDS**

### A. LEAVE TO AMEND COMPLAINT

Whether to allow a party to amend its complaint is "within the discretion of the district court." Am. Med. Ass'n v. United Healthcare Corp., No. 08 Civ. 2800, 2006 WL 3833440, at *3 (S.D.N.Y. Dec. 29, 2006). Leave to amend a pleading "shall be given freely when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has interpreted Rule 15 to permit such amendments unless (1) the party seeking to amend has unduly delayed, (2) the party seeking to amend is acting with a dilatory motive, (3) the proposed amendment would cause undue prejudice to the opposing party, or (4) the proposed amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). A proposed amendment is futile if it could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). The adequacy of the proposed amended complaint is to be judged by the same standards as those governing the adequacy of a filed pleading. Id.

6

## B. **RULE 12(b)(6) MOTION TO DISMISS**

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005)(internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiffs claiming fraud, including securities fraud, must additionally satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d

7

Cir. 2007). A complaint alleging securities fraud must also meet the requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. Section 78u-4(b), which requires that a complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is based on information or belief, the complaint shall state with particularity all facts on which that belief is formed." ATSI Commc'ns Inc., 493 F.3d at 99.

### III. DISCUSSION

Section 10(b) and Rule 10b-5 forbid "any person . . . [t]o make any untrue statement of a material fact" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b-5(b). These prohibitions are aimed at conduct "involving manipulation or deception, manipulation being practices . . . that are intended to mislead investors by artificially affecting market activity." TCS Capital Mgmt., LLC v. Apax Partners, L.P., No. 06 Civ. 13447, 2008 WL 650385, at *13 (S.D.N.Y. Mar. 7, 2008)(citing Field v. Trump, 850 F.2d 938, 946 (2d Cir. 1988). Any alleged manipulation or deception must have "direct pertinence to a securities transaction." Rand v. Anaconda-Ericsson Inc., 794 F.2d 843, 847 (2d Cir. 1986). See also In re JWP Sec. Litig., 928 F. Supp. 1239, 1251 (S.D.N.Y. 1996). Therefore, transactions

which constitute "no more than internal corporate mismanagement" are not within the ambit of Section 10(b). Santa Fe Industries Inc. v. Green, 430 U.S. 462, 479 (1977).

A plaintiff bringing suit under Section 10(b) must allege: "(1) [A] material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008). The United States Supreme Court has held that where minority shareholders allege a violation of Section 10(b) and Rule 10b-5 by way of a short form merger, they must show that any alleged nondisclosures were material -- meaning that plaintiffs could have altered their conduct to avoid losses had they possessed the undisclosed information. See Santa Fe, 430 U.S. 462 at 474 n.14. Moreover, a minority stockholder plaintiff must establish a causal connection between the alleged misrepresentations and nondisclosures and his or her forced sale of securities. See Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1106 (1991); Grace v. Rosenstock, 228 F.3d 40, 49 (2d Cir. 2000).

The Court is not persuaded that the additional facts alleged by Plaintiffs establish that Defendants'

nondisclosures were material or that they caused Plaintiffs'
sale of stock as required by Section 10(b) and Rule 10b-5.
Accordingly, the Court concludes that Plaintiffs' proposed
amendments to their Complaint would be futile because they
would not survive a motion to dismiss.

A. ADDITIONAL ALLEGED MISSTATEMENTS AND OMISSIONS

Plaintiffs' proposed amendments to the Complaint include
(1) facts showing how the Financing Transactions allowed the
Merger to go forward and (2) facts showing that Defendants
omitted to disclose Pinto's ownership interest in FDS to Pure
Corp.'s Board of Directors and to shareholders, as part of a
scheme to issue dilutive shares and bring about the Merger.
The Court considers these additional allegations in
conjunction with allegations made in the original Complaint
that Pinto misrepresented to Pure Corp.'s Board of Directors
and its CFO that FDS was a foreign third party, when in fact
Pinto had an ownership interest in FDS. (Complaint ¶ 64 at
12.)

In the August 24 Letter, Plaintiffs outline how the
Financing Transactions -- by which Defendants issued millions
of warrants for Pure Corp. shares to FDS, Trimarine, and
Plainfield -- enabled the Merger to go forward. Their
allegations provide additional detail linking the Financing
Transactions to the consummation of the Merger. Before the

Financing Transactions, Plaintiffs allege Plainfield held
58.82 percent of Pure Corp.'s voting power and Plaintiffs
held 6.45 percent. After the initial deals with FDS in 2008
and 2009, FDS and Plainfield collectively held 87.38 percent
of outstanding shares, and after two additional deals with
FDS and Trimarine, Plainfield, FDS and Trimarine collectively
held more than 90 percent of shares (August 24 Letter at 2.)
Plaintiffs allege that those shares were then transferred to
PBC, giving PBC sufficient voting power to conduct the Merger
without minority shareholder approval. (Id.) The value of
Plaintiffs' shares fell as the Financing Transactions
continued, from approximately $5,500,000 at the time of
purchase to $130,742.87 at the time of the Merger. Id. at 3.

In the September 28 Letter, Plaintiffs detail
Defendants' alleged misrepresentations and omissions about
the Financing Transactions in public Securities and Exchange
Commission ("SEC") filings. Plaintiffs assert that ten Pure
Corp. 10-Q and 10-K filings between March 2009 and April 2011
failed to disclose (1) Pinto's interest in FDS, (2) the
intentional nature of Pure Corp.'s defaults, or (3) the
"existence or nature of the scheme of which these are a part."
(Sept. 28 Letter at 2-3.) Notably, Plaintiffs concede that
the public filings disclosed the terms of the Financing
Transactions. Plaintiffs outline what they allege to be Pure

11

Corp.'s undisclosed plan to issue dilutive shares by purposely defaulting on the Financing Transactions. As one example, in late 2008, Pure Corp. borrowed $1,000,000 from FDS for a period of time, after which Pure Corp. defaulted, allegedly intentionally. By the terms of the loan, FDS was then issued warrants to purchase more than 26 million shares in Pure Corp. stock. Plaintiffs describe a series of similar defaulted loan transactions with FDS and Plainfield, as well as a performance bond agreement that "did not serve any legitimate business purpose." (September 28 Letter at 2.)

The misstatements and omissions that Plaintiffs allege in their original Complaint and in their letters fall into two categories, neither of which satisfy the pleading requirements of a Section 10(b) claim. One group of misstatements and omissions, regarding Pinto's ownership in FDS and Trimarine and the motives behind the Financing Transactions, allegedly were made in public filings to shareholders, who were not in a position to take any action to approve or veto the Financing Transactions. Those statements were not causally linked to the Merger and are immaterial, as discussed infra. The second group of misstatements, omitting to disclose Pinto's stake in the Financial Transactions, allegedly were made by Defendants to Pure Corp.'s Board of Directors and CFO to persuade them to

12

undertake the Financing Transactions -- actions that raise questions of mismanagement and breach of fiduciary duty but do not state a claim of material misrepresentations or omissions under Section 10(b) and Rule 10b-(5). The Court will address each in turn.

B.   CAUSATION BETWEEN ALLEGED MISREPRESENTATIONS AND PLAINTIFFS' FORCED SALE

"It is long settled that a securities fraud plaintiff 'must prove both transaction and loss causation.'" Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005). Transaction causation refers to the "causal link between the defendant's misconduct and the plaintiff's decision to buy or sell securities." Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 197 (2d Cir. 2003). To prove loss causation, the plaintiff must show "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001).

In Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1106 (1991), the Supreme Court found no transaction causation where minority shareholders' proxy votes were not necessary to approve a merger. The Court rejected a theory of causation that would stem from something other than "the enforceable terms of the parties' corporate relationship." 501 U.S. at

1101. Although <u>Virginia Bankshares</u> dealt with Section 14(a) of the Exchange Act, 15 U.S.C. Section 78n(a), the Second Circuit extended its reasoning in <u>Grace v. Rosenstock</u>, 228 F.3d 40 (2d Cir. 2000) to hold that minority shareholder plaintiffs bringing a forced sale claim under Section 10(b) and Rule 10b-5 must present "non-speculative evidence of loss causation and transaction causation." <u>Grace</u>, 228 F.3d at 48. In <u>Grace</u>, the Court affirmed dismissal of the minority shareholders' Section 10(b) claims because their votes were not required for the approval of the merger, preventing plaintiffs from proving transaction causation. <u>See</u> <u>id.</u> at 49.

Plaintiffs have not adequately pled additional facts that make out a causal link between Defendants' misconduct and Plaintiffs' forced sale of their Pure Corp. shares. The misstatements and omissions catalogued by Plaintiffs in their September 28 Letter are contained in quarterly and annual SEC filings -- not in the Notice of Merger, proxy statement, or any other document directly related to the Merger. This situation contrasts to that in <u>Vine v. Beneficial Finance Co.</u>, 374 F.2d 627 (2d Cir. 1967), in which the Second Circuit upheld a Section 10(b) claim by a minority shareholder forced to sell his shares as a result of a short form merger. Plaintiff Vine's claim asserted that Beneficial, the acquiring company in that merger, published false statements

14

in its tender offer to other shareholders of the stock in the acquired company. Those misleading statements to other shareholders, Vine alleged, permitted Beneficial to amass the 95 percent of stock necessary to complete a short form merger. The Vine court found that the fraudulent conduct did not need to be aimed at Vine himself for a Section 10(b) claim to proceed. Because of the nature of a short form merger, plaintiff needed to show only "deception which misled Class A stockholders and that this was in fact the cause of plaintiff's claimed injury." Id. at 635. Vine's allegations met that test.

The allegations here, however, are not analogous to the facts in Vine. There is no causal link between Defendants' misleading statements and the Merger. The statements at issue are contained in documents unrelated to the Merger itself: quarterly and annual public filings to shareholders, none of which sought any action on the part of shareholders related to the Merger. The alleged misleading statements were not made in a tender offer or, as in Grace, in a proxy statement mailed to shareholders prior to the merger. Grace, 228 F.3d at 42. Plaintiffs have not alleged that the Notice of Merger itself contained any material misstatements or omissions.

Unlike the tender offer in Vine, Pure Corp.'s SEC filings are not alleged to have misled shareholders into authorizing

15

the Merger. Plaintiffs do not claim that the deceptive public filings induced them to sell their shares in Pure Corp., nor do they claim that the public filings caused FDS, Trimarine, and Plainfield to purchase enough Pure Corp. stock to effect the Merger. The filings were not an "essential link" in the accomplishment of the Merger, as is the case where "solicitation links a directors' proposal with the votes legally required to authorize the action proposed." Virginia Bankshares, 501 U.S. at 1102 (citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385 (1970)). The causal link between the nondisclosures alleged in the SEC filings and the Merger is too attenuated to satisfy the transaction causation requirement of Section 10(b).

The same pleading deficiencies that prevent Plaintiffs from establishing transaction causation prevent them from establishing loss causation. Given the intervening Merger, Plaintiffs have not shown that the fraudulent statements or omissions regarding the Financing Transactions were the "proximate cause" of their actual loss, Suez Equity, 250 F.3d at 96, or that economic harm they suffered was a foreseeable consequence of the misrepresentations to shareholders. See Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1495 (2d Cir. 1992).

C. MATERIALITY OF DEFENDANTS' ALLEGED MISREPRESENTATIONS

Even if Plaintiffs were able to prove causation, their claim would still fail as the nondisclosures they allege are immaterial.

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 445 (1976); see also Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000). Materiality also requires that plaintiffs would have had some means of taking action were they to know about information misrepresented or omitted by a defendant. Madison Consultants v. Fed. Deposit Ins. Corp., 710 F.2d 57, 62 (2d Cir. 1983) ("[T]o establish materiality a plaintiff 'must show that . . . if it had known the truth about defendants' concealed plans [it] had available some reasonably effective means of protecting [itself] against loss.").

In Santa Fe, the Supreme Court considered a minority shareholder's claim that failure to provide advance notice of a short form merger was a material non-disclosure that violated Section 10(b) and Rule 10b-5. As in this case, plaintiffs did not receive notice of the merger or of the valuation of their shares until the merger had been conducted. The Supreme Court rejected plaintiffs' claim, finding that

17

plaintiffs never alleged "how they might have acted differently" had they received the disclosures before the merger. Santa Fe, 430 U.S. at 474 n.14. Santa Fe dictates that for an omitted fact to be material, a shareholder must be able to "respond to the fact's disclosure by protecting himself from possible financial loss." TCS Capital Mgmt., 2008 WL 650385, at *17 (citing United States v. Margala, 662 F.2d 622, 626 (9th Cir. 1981).

Plaintiffs have not shown that, had they been equipped with the information related to Pinto's ownership stake in FDS and Trimarine and the overall "scheme" to issue dilutive shares and freeze out minority shareholders, they would have been in a position to stop the Merger. Neither the decision to enter the Financing Transactions nor the decision to undertake the Merger was subject to shareholder vote. The decision to enter the Financing Transactions was made by Pure Corp.'s Board of Directors; had Plaintiffs learned that Pinto was a related party in the Financing Transactions, their remedy would have been in the form of a suit for breach of fiduciary duty, not a securities fraud suit. As for the Merger, at no time did Plaintiffs have sufficient votes to halt a Nevada short form merger. Whether Plaintiffs' incapacity to stop the Merger is recognized as lack of transaction causation, as in Grace, 228 F.3d at 49; or lack

18

of materiality, as in <u>Santa Fe</u>, 430 U.S. at 474 n.14, the outcome is that Plaintiffs fail to make out a claim under Section 10(b) based on the Merger and resulting forced sale.

The misstatements and omissions Plaintiffs detail in the public filings relate exclusively to the Financing Transactions, which are separate from the Merger and a matter of internal corporate governance. Section 10(b) and Rule 10b-5 do not "cover the corporate universe," <u>Santa Fe</u>, 430 U.S. at 479-80, and while the misstatements and omissions detailed by Plaintiffs may describe a breach of fiduciary duty and serious corporate mismanagement on the part of Defendants, they are immaterial as a matter of law under Section 10(b) and Rule 10b-5.

Plaintiffs also allege in their Complaint and August 24 Letter that Defendants made false statements to Pure Corp's Board that caused the Financing Transactions to be approved. (August 24 Letter at 3.) Unlike Pure Corp.'s shareholders, the Board of Directors was in a position to approve the Financing Transactions. But statements between corporate officers and directors on a topic of internal corporate governance, however false, are not actionable under Section 10(b). <u>See</u> <u>TCS Capital Mgmt.</u>, 2008 WL 650385, at *19 ("[T]he issue under the federal securities laws is whether plaintiff

19

was   defrauded,   not   whether   the   *Board*   was
defrauded.")(emphasis in original).

The added facts that Plaintiffs have alleged fail to
establish that their amended complaint would make out a claim
for securities fraud under Rule 10(b) and Rule 10b-5 that
would survive a motion to dismiss under Rule 12(b)(6).

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 26) of plaintiffs Liana
Carrier, Ltd. and Amir Rimon for leave to file an amended
complaint is **DENIED**.

The Clerk of Court is directed to terminate any pending
motions and to close this case.

**SO ORDERED.**

Dated: New York, New York
       28 October 2015

                                   VICTOR MARRERO
                                       U.S.D.J.

20